# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## JUNE TERM, 1876.

The Atlantic and Gulf Railroad Company, Appellants, vs. George W. Allen, Collector of Revenue for Suwannee County, Respondent.

1. The charter of a railroad company providing " that the said railroad and its appurtenances, and all property therewith connected, shall not be taxed higher than one half of one per cent. upon its annual net income," is a contract between the State and the company, the obligation of which cannot be impaired by subsequent action of the State.

2. Upon the amendment of a charter of a railroad company (whose road was thus exempt from taxation) authorizing it to construct a branch road, the branch road, when constructed, became subject to the provisions of the original charter, and the right of exemption from taxation therein granted attached with full force to the branch road.

3. A statute providing that "all rights" as to a line of railway which " are and have been legally vested " in one corporation shall pass to another corporation upon a sale by one to the other, is sufficiently clear and certain to pass a right of exemption from taxation, if such right exists in the vendor company at the time of sale.

4. The railroads exempted from taxation under the 18th section of the act entitled "an act to provide for and encourage a liberal system of internal improvements in this State," approved January 6, 1855, were such roads only as were a part of the State system thereby created, and the railroad from Live Oak, Florida, to Lawton, Georgia, was not embraced therein. This section of that act construed.

5. The duration of a franchise or right granted by the Legislature to a corporation is fixed by the constitution operative at the time of the enactment, or by the enactment itself. The rights passing to the Atlantic & Gulf Railroad Company under the act of 1866, are coexistent with the franchise to be a corporation therein granted.

Appeal from Circuit Court for Suwannee county.

*John F. White* for Appellants.

I. The bill filed by complainants in the court below claims that by virtue of the provisions of the act incorporating the Pensacola & Georgia Railroad Company, and the amendments thereof, and that by virtue of the provisions of the act of 1855, commonly called the Internal Improvement Act, there was a contract entered into between them and the State of Florida in regard to taxation, the obligations of which are violated by that part of the act of 17th February, 1874, which seeks to impose a tax upon their road; that so much of said act as seeks to impose said tax violates Article I, Section 10, of the Constitution of the United States, and conferred no authority upon the defendant in the court below to collect the said tax as attempted.

I. In support of these views, it is insisted that the act of 8th January, 1853, incorporating the Pensacola & Georgia Railroad Company, and the acts amendatory thereof, passed respectively 22d December, 1859, and the 14th December, 1866, must be taken and construed together as one act.

II. That this follows, and is the result of that well established rule laid down by all the books in regard to the construction of statutes or contracts, that the *intention* of the parties must prevail, and that such *intention* is to be deduced from the whole and every part of a statute or contract taken and compared together. 1 Kent Com., § 462 ; Coke on Litt., 381, note *a* ; Chief Justice Marshall, 12 Wheat. 332.

And this principle is carried so far as to apply even

The Atlantic and Gulf R. R. Co. v. Allen.

though some of the statutes have expired and are not referred to in the other acts, when the acts are in "*pari materia*," because a code of statutes relating to one subject must have been governed by one spirit and policy, and intended to be consistent and harmonious in its several parts and provisions. 1 Burr, 445 ; Dwaris on Statutes, 569 ; 15 Johns. 380 ; 10 Fla. 145.

The Supreme Court of Florida sustains this view in Harroll against Harroll, (8 Fla.,) and say it is a rule of law in construing statutes that the *original* act and the *amendments* are to be viewed as one act. 8 Fla. 46.

Plowden says "these are rules by which the sages of the law have *ever* been guided," and "they are maxims of sound interpretation which have accumulated by the experience and are ratified by the approbation of ages." Plowden, 205.

Appellants' road, like the trunk road, has been held exempt from taxation from the time of its construction until 1874, except as provided for in the charter, and we hold that the long acquiescence in this construction of the original act of incorporation and amendments thereof fixes this construction. 1 Cranch., 299 ; 1 Wheat., 304; 6 Wheat., 264.

The Supreme Court of the State of Georgia, in a recent case, very similar to the case at bar, uses the following language : "We must look to the original charter in order to ascertain what those rights, privileges and immunities are, inasmuch as the same are not specified in the new consolidation act." C. R. R. & B. Co. vs. State ; S. W. R. R. Co. vs. State, page 101, pamphlet edition, January, 1875.

The plain and unmistakable language used by the Legislature in the passage of the act of 1859 and the act of 14th December, 1866, clearly shows the intention of the Legislature to be such as is here urged. The language is as follows in each case :

"An act to amend *the act* entitled an act to incorporate

the Pensacola and Georgia Railroad Company." Acts of December 1859, 1866.

The rule laid down by this court and cited in Harroll against Harroll (8 Fla.) applies with peculiar force in the case at bar. Where the statute is an act of incorporation conferring a charter, and delegating, limiting, and specifying powers therein, the act becomes the constitution of the company incorporated, and like any other constitution when amended must be construed with the amendments as one entire instrument.

III. Having, as we think, shown that the act incorporating the Pensacola and Georgia Railroad Company, and the amendments thereof passed in 1859 and 1866, are to be taken as one act, we now proceed to show that there was a *contract* therein in regard to taxation, the obligations of which are violated by the revenue act of February 17, 1874.

The 16th section of the act of incorporation stipulates that the "Pensacola and Georgia Railroad and its *appurtenances*, and all property connected therewith, shall *not* be taxed *higher* than one-half of one per cent. on its annual net income." Pamphlet Act 1853, Section 16, p. 48.

The act of 17th February, 1874, under which appellants' road is attempted to be taxed in this case, levies a higher tax than one-half of one per cent. on its annual net income, and is a tax upon the entire property owned by appellants in the road. Act of 17th February, 1874, Section 47, etc.

IV. Appellants further insist that the act of 17th February, 1874, violates the obligation of the *contract* under the provisions of the act of 1855, commonly called the Internal Improvement Act, which enters into, and forms part of the contract made with appellants through their grantors, and subsequently *ratified* by the State of Florida, 14th December, 1866. Bush's Digest, p. 370, Sections 18–24; Act 1853, Section 4, p. 44; Act 14th December, 1866, p. 45.

V. Appellants hold that the contract embraced in the act of incorporation and the amendments thereof, and in the

Internal Improvement Act, is protected by the Constitution of the United States, where the contract is based upon a consideration received or supposed to be received, and that this has been so often decided that the consideration can no longer be considered an open one. Cooly's Con. Lim., side p. 281, and authorities there cited.

The Supreme Court of the United States says that these principles have so often been set forth that it is a work of supererogation to enunciate them again. 13 Wallace, 646, 264.

The following rules for the construction of the contract are respectfully submitted:

I. The *intention* of the contracting parties at the time the agreement or contract was made, must control the construction of the contract. Dwaris on Stat., 658, 698, 702, 703; Cooley's Con. Lim., 58–9.

II. That the intention is to be found in the words taken in their natural sense, and the words used in this contract are, " *shall not be taxed higher than one-half of one per cent. on the annual net income.*"

III. The intention is to be found by acts of the same character, passed at or about the same time, on the same subject matter. Acts 1853 chartering various railroads, and the spirit of the Internal Improvement Act.

IV. The intention may be inferred from all subsequent legislation up to 1869, on the subject of railroads, by which it will be seen that they were held exempt from taxation as now exempted.

V. The intention of the contracting parties is unmistakably shown by the subsequent conduct in dealing with this question, for from 1853 to the date of the levy made by the Collector of Suwannee county in this case, no effort has been made to enforce the collection of the tax otherwise than as in accordance with the act of incorporation. 1 Cranch., 299; 1 Wheat., 3, 4.

VI. Appellants insist that if it should be held that their

road is an independent branch road, yet that the same was built under and by virtue of and in accordance with the provisions of the act incorporating the Pensacola and Georgia Railroad Company and amendments, and being completed according to the charter, the *contract* as to it became an executed contract, which differs in nothing from a grant.

A grant amounts in its own nature to the extinguishment of the right of the grantor, and that a party is, therefore, estopped by his own grant. 6 Cranch., 183; Cooley's Con. Lim., side p. 274.

VII. Appellants further insist that the State of Florida is estopped from attempting to collect the tax as proposed by the act of 1874, because " the rule of law is clear that when one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on the belief so as to alter or change his previous condition, the former is precluded from averring a different state of things existing against the latter at the same time." Bigelow on Estoppel, 475.

Appellants' bill alleges that they were moved to make the investment in this branch road by the faith imposed in the guarantees and assurances contained in the acts of 1866, and prior acts. The demurrer of defendant admits this to be true.

Appellants further insist that the State is estopped from enforcing the collection of said tax, because " a party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against that person." Bigelow on Estoppel, 500; Act 14th December, 1866, page 45 ; 2 Curtis, 379.

But it is insisted that we have forfeited our charter and rights because of non-compliance with Section 17 of the act of incorporation.

This is denied.

I. Because appellants' road was completed within the time and according to the requirements of the charter.

II. Because the requirement of Section 17 is a condition subsequent, and does not, of its own force, destroy appellants' franchise, nor until proceedings are commenced on the part of the State to procure a judgment of forfeiture by a court of competent jurisdiction. 9 Wendell, 351; 23 Wendell, 255; 8 Wendell, 645.

III. Because the franchise remains good until judicially declared forfeited, in a suit in behalf of the State. 2 Beas., 46; 9 S & M., 394; 3 Amer. Rep.

Our bill of rights declares that no person shall be deprived of life, liberty or property without due process of law. Constitution of 1868.

"A forfeiture without due notice to the owner of the property, and without an opportunity of being heard on the question of the owner's culpability, is contrary to the bill of rights." 3 Amer. Reports, 636; 1 Brightley's Digest, page 115, Section 355, title, Forfeiture.

Where the Legislature violates the bill of rights, its action is void; the declaration in the bill of rights is, in itself a prohibition. Cooly Con. Lim., side page 176.

But we are told that our franchise is a mere privilege, which can be revoked by the Legislature at its will or by a subsequent Legislature. This is denied, for—

IV. While it may be true of municipal corporations created for governmental purposes alone, yet a different rule obtains where a corporation is created like that of the appellants.

"That corporations which are granted, not as a part of the machinery of government, but for the benefit of the corporators, are held to be contracts, and that the grant of the franchise can no more be resumed by the Legislature, or its benefits be diminished or impaired without the consent of the grantees, than any other grant of property, unless the right to do so is reserved in the charter itself." Cooly Con. Lim., side page 279.

No such reservation is to be found in our charter.

We hold that the act of 14th December, 1866, incorporating appellants is a grant, conferring on them the franchise of the P. & G. R. R. Co., which had vested in the branch road. 4 Curtis, 501–2.

But it is insisted that by the Constitution of St. Joseph, or the Constitution of 1845, (Thompson's Digest, page 47, Section 46,) that the charter of the P. & G. R. R. expired in twenty years.

V. This is denied, as the act of incorporation did not confer exclusive privileges on the Pensacola and Georgia Railroad Company. 10 Fla.

But it is alleged that appellants' rights are affected by the Constitution of 1865–'6, and by the revenue law passed under the same in 1866.

VI. This is denied, for Section 19 of the bill of rights, and Sections 2 and 3 of Article XI show that the convention respected the rights of appellants. Constitution of 1865–6, Section 19, Bill of Rights; Sections 2 and 3 of Article XI.

The second section of the revenue act of 1865–'6 is in the following words: " Provided that no taxes shall be levied upon property specifically exempted by law."

Appellants further insist that if it were even otherwise, their rights would be protected by the Constitution of the United States against the Constitution and revenue act of 1865–'6. 13 Wallace, 646.

But it is insisted that the Pensacola and Georgia Railroad Company could not convey its purchase by a sale to complainants.

VII. To this we reply, while it may be doubted whether a franchise can be seized and sold under execution, contrary to the will of the owner, yet the owner may, with the consent of the sovereign, sell, transfer and convey it as other property. Bouvier's Law Dic. Title Franchise; 15 Wallace, 466; 10 Howard, 376.

As to whether the original contract contained in the act of incorporation and amendments was based upon a suffi-

cient consideration or supposed consideration, we need only to refer to the condition of our State with its valuable pro-ductions of cotton, sugar, tobacco, lumber, and naval stores shut out from the markets of the world in 1853, compared with the facilities for transportation and immigration after the construction of these roads, and to the consequent en-hanced value of the taxable property of the State in the section traversed by them.

We conclude, therefore, that there was a contract between the contracting parties, based upon a sufficient considera-tion, stipulating that the appellants should not be taxed higher than one-half of one per cent. on the annual net in-come of their road.

And that as the act 17th February, 1874, does propose to collect a higher tax from the appellants upon their road, it violates the obligations of said contract, and is, therefore, void.

*Mr. Attorney-General W. A. Cocke* for Respondent.

The act of the Legislature of Florida requires a tax to be levied on the Railroads of this State. *Vide* Session Acts of 1874, Chap. 1976, Section 47.

The bill seeks to enjoin the collection of this tax on the ground of the illegality of the act of 1874.

The act of the Legislature of 1874, under which the rail-road was taxed, was passed since the present constitution, that of 1868, was adopted. *Vide* Article XVI, Section 24 of the Constitution of 1868.

The act exempting the Pensacola and Georgia Railroad from taxation, as of the other railroads of Florida, is not operative in the present case.

If the company did not forfeit its charter it failed on its part to comply with the requisites of the charter, and to pay the interest on its bonds and the sinking fund. *Vide* the Act of January 6th, 1859, known as "An Act to Provide for and Encourage a Liberal System of Taxation." See 18th Section.

This creates no vested right over and above a mere *statutory privilege.* Cooley on Con. Lim., p. 283.

The constitutional prohibition on exemptions from taxation repeals a mere statutory exemption. *Vide* Blackwell on Tax Titles, Chapter 33.

There was no consideration on the part of the State. Cooley on Con. Lim., 281; Frask vs. Maguire, 18 Wallace; Railroad Company vs. Pennington, 18 Wallace.

As to consideration, *vide* Gilmore vs. Sheboygan, 2 Black, 510.

The act of 1855 was at the time of its passage unconstitutional. *Vide* Constitution of 1845; Thompson's Digest, Section 46, p. 47.

What are exclusive privileges on the part of a corporation? To use its property exempt from taxation. Bouvier Title Privilege; Worcester's Dictionary.

The Atlantic & Gulf Railroad is a branch of the P. & G. Railroad. See the act incorporating the P. & G. Railroad and amending its charter.

Then there was an act authorizing the P. & G. Railroad to sell its branch road. Act of 1866, p. 45.

When the A. & G. Railroad was put in possession of this *branch* of the railroad, the P. & G. had no franchises as to exemption.

It does not appear that .there was a sale, and, consequently, the A. & G. has no franchise in this State.

If there was a sale the charter privileges were surrendered to the State. Angel & Ames on Corporations, § 776.

The privilege of exemption had passed from the P. & G. before the act of 1866 authorizing the sale was passed.

The act of 1866 authorizing the P. & G. Railroad to sell the road, with exemption from taxation, from Lawton to Live Oak, was unconstitutional. Con. of 1865, Art. XIII, § 2; *vide* Redfield on Railways, 2d vol., top pages 430–431.

Had the P. &. G. Railroad a right to build a railroad from Live Oak to some point on the Georgia line?

By the original charter approved January 8th, 1853, it had no such right.

By an act amending the charter of the P. & G. Railroad, it had a right to construct a road from its main line to the Georgia line, in Hamilton county. *Vide* Act of December 22d, 1859, § 2, Chap. 1021, p. 36.

Under this amended charter the P. & G. Railroad had a right to construct the road now extending from Live Oak, in Suwannee county, to some point on the Georgia line.

The opinion of the court in the case of the Fla., Atlantic & Gulf Central Railroad vs. P. & G. Railroad Co., 10 Fla., p. 145, affirming the decree of the Circuit Court for the Middle Circuit, sustains this point.

It is conceded that the P. & G. Railroad did construct this road, and that the iron was taken up by the Confederate States Government.

The P. & G. Railroad Company had a right to build this road.

Then, how does this question affect the right of the State to tax the road, according to the act of 1874? Exactly in the same manner as it could tax the P. & G. Railroad, were it in existence. And the court is referred to my brief in this case, maintaining the right of taxation to the P. & G. Railroad, because it had never complied with its charter; that it had been sold out, and that the Jacksonville, Pensacola and Mobile Railroad was substituted in its place by statute, and that the J., P. & M. Railroad could claim no exemptions from taxation that did not accrue to it as the successor of the P. & G. Railroad.

The act of the Legislature of Florida, authorizing the P. & G. Railroad to sell and convey to the A. & G. Railroad its branch running from Live Oak to Lawton, approved December 13th, 1866, could confer no privileges on that road which the P. & G. Railroad did not have. I have shown that the P. & G. Railroad was not exempt from the right of the Legislature to be taxed.

14

The A. & G. is not lawfully exercising the functions of a corporation in the State of Florida, because there is no evidence of its ever having purchased that branch of the P. & G. Railroad running from Live Oak to Lawton, the title never having passed from the P. & G. Railroad, according to law, or even in obedience to the statute of December 13th, 1866.

It would appear from the failure of the P. & G. Railroad to comply with the act of December 13, 1866, that what is considered a sale of the Live Oak branch is a nullity and that the act thus far is a dead letter, and that the A. & G. is exercising the functions of a corporation without having complied with the statute, and has no right whatever in this State, as far as the law and the records show, that will exempt it from taxation.

The case of "Erie Railway Company" vs. Pennsylvania, 21 Wallace, 492, sustains the legal view that a State, by enactments exempting State Roads from taxation, does not loose the right to tax other roads coming into the State. If the roads of the State of Florida are exempt from taxation by charter, it does not follow that the A. & G. Railroad from Lawton to Live Oak is exempt, for it does not claim to be a branch of the P. & G. Railroad, and it shows no title under the Act of 13th December, 1866.

*George P. Raney* for Appellant.

This suit involves the question of the right of the State to tax the railroad from Live Oak to the Georgia line. Under Section 47, Chapter 1976, of Laws of Florida, a tax has been levied, and while the appellee and defendant was attempting to collect it, the appellant and complainant filed his bill, and a rule to show cause why an injunction should not be granted as prayed, was made. The defendant demurred to the bill, and the cause comes here upon an appeal from the Circuit Court's order sustaining the demurrer and dismissing the bill.

There is an agreement in the record made by counsel waiving the question of the equitable jurisdiction to enforce the collection of a tax.

The appellant claims that the property sought to be taxed is exempt from taxation; that it was exempt at the time the act of 1866 was passed, under which act, (Chapter 1573, Acts 1866, page 45), appellant acquired it, and that this exemption, whether total or partial, passed with the property to appellant.

We consider that, practically, the sole questions for argument here, as the allegations of the bill are admitted by the demurrer, are:

1st. Was this property exempt from taxation at the time the Pensacola and Georgia Railroad Company sold and conveyed it to appellant, and if so, what was the character of the exemption?

2d. If it was either entirely exempt from taxation, or only subject to a limited tax, is the State precluded by the act of 1866 (Chapter 1573) and its contract thereunder with appellant, as alleged in the bill, from taxing it otherwise, or in any greater amount than it was taxable at the time we purchased it?

The Act of 1853, Chapter 484, incorporating the Pensacola and Georgia Railroad Company, by Section 3 fixed the termini of the Pensacola and Georgia railroad at a point on the waters of Pensacola Bay and some point on the Georgia and Florida boundary line, to be determined by a Board of Directors. Section 2 of the act fixed the capital stock at $1,500,000, with privilege of increasing it if necessary to $3,500,000. Section 16 provided "that the said railroad and its appurtenances, and all property therewith connected, shall not be taxed higher than one-half of one per cent. upon its annual net income." This act was approved January 8, 1853.

December 22d, 1859, the Pensacola and Georgia Railroad Company by an amendment to its charter was empowered.

to build this "branch road." (Chapter 1021, page 36, Acts 1859.)

Prior to this time the company had accepted the provisions of the Internal Improvement law, and under that law and its original charter had constructed its road to a point east of the branch road. Having accepted the provisions of the Internal Improvement law, it became entitled to, and at the time of the purchase of the branch road by the appellant, was enjoying, the privileges offered or guaranteed thereby.

The 18th Section of the Internal Improvement law provides that the capital stock of any railroad company accepting the provisions of the act shall be forever exempt from taxation, and the roads, their fixtures and appurtenances, including work-shops and ware-houses, vehicles and property of every description needed for the purpose of transportation of freight and passengers, or for the repair and maintenance of the roads, shall be exempt from taxation while the roads are under construction, and for thirty-five years from their completion, and all the officers of the companies and servants and persons in the actual employment of the companies be exempt from performing ordinary patrol, jury, militia and road duty.

This section, it will be perceived, offered these benefits, and the companies accepting the provisions of the act became entitled to them. The only forfeiture clause in the act is in Section 30, which provides that no bonds shall be issued to the companies in any part of their roads not completed at the end of eight years from the passage of the act; and any company failing to grade twenty miles of road within four years from filing notice of the acceptance of the terms of the act, shall forfeit all right to its benefits. Within this clause it is apparent the Pensacola and Georgia Company never came, and if a sale under the third section of the act placed the company outside of the benefits of the act after the sale, this sale did not take place till after the

Atlantic and Gulf railroad had acquired the property under the Act of 1866.

Under the above facts we claim that the branch road was at the time of the purchase by appellants—

1st. Entirely exempt from taxation.

2d. That if not entirely exempt that it can be taxed no higher and in no other manner than as prescribed in Section 16 of the original charter, " one-half of one per cent. on annual net income."

We maintain the first proposition on the ground that the exemption of the capital stock of a company exempts the whole property of the company.

" A statute exempting the capital stock of a railroad company exempts all property of the company necessary to carry on the business." 14 Georgia, 275 ; 6 Gill. 288.

" The word ' stock ' includes all the property of the corporation." 26 Georgia, 651.

" Under a statutory provision subjecting to taxation ' all property owned by incorporated companies over and above their capital stock,' the road-bed, machinery, depots and other property of a railroad company used by the corporation in operating its road, are exempt from taxation as a part of the capital stock of such company." 30 Mo. 550.

Under such a provision as this, of course, if the company owned property greater in value or amount than the value or amount of its capital stock, then such excess would be taxable, unless the statute provided that the specific property sought to be taxed should not be taxed.

The above cases and others cited on pages 846 and 847 of Abbott's Digest of the Law of Corporations, show the effect of such an exemption of the capital stock.

In the 14th Georgia case the facts were that the city of Rome had power to levy a tax on all persons and professions and property of every kind, whether real or personal, within its corporate limits, subject by the laws of the State to taxation, the tax not to exceed the State tax.

The charter of the railroad company provided that "the *stock* of said company shall not be liable to any duty whatever, unless such and no more as is now in banks in this State." Tax execution was levied upon property of company in Rome, Georgia. The court held as follows : " The property of a railroad company, within the city of Rome, held to be a part of its capital stock, and not liable to taxation by that city as property."

So then it is clear that an exemption of the capital stock of a company exempts its property, and as there was nothing in the amendatory act of 1859, which said that the exemption of the capital stock of the Pensacola and Georgia Railroad Company should not apply to or cover the branch road when built, there is no reason that we can see why the branch road is not as much exempt as any other property of the company. All of the stock of the company was exempt, whether the original $1,500,000, or any increase thereof that may have been made under Section 2 of the Act of 1853, and consequently all the property it may have represented, or that may have been held under it. The case of the State vs. the Norwich Railroad Company, 30th Conn., cited on pages 846–7 of Abbott's Digest of Corporations, where the head note is given in full, shows that an exemption of capital stock applies to new as well as old stock.

The thirty-five year clause of Section 18 of the Internal Improvement law, it is clear, applies only to " the roads," &c., within the line of the Internal Improvement law. This is apparent from a careful consideration of Sections 2, 3, 18, 4, 11, 12, 13, 8 and 9.

It will be seen that the bonds were to be a lien upon this line. That the granting an exemption merely of the capital stock of a company accepting the provisions of the act, or building a particular section of the road, would have been of no benefit to the bondholder in case of a dissolution of the company from any cause. The exemption

would then have been dependent upon the continuation or existence of the stock, and in case it ceased to exist at any time prior to the maturing of the bonds, the bondholders' security would have been so much impaired, and could have been defeated by sale for nonpayment of taxes, the payment of which, whether it was made by the owner of the property or the lien-holder, was a burden upon and disadvantage to the security. Hence, to make the security better, the express limitation of thirty-five years, the period for which the bonds were to run, was declared.

The limitation in Section 15 of the original charter is an answer to any argument against the exemption based upon the idea of " monopoly," or " railroad rule," or " imposition."

2. But if this position is not sustained by the court, we submit that the rate and kind of taxation prescribed in Section 16 of original charter was the only taxation this property was liable to, and if this view is the correct one, we would remark that there is no law imposing a tax of this kind The tax imposed by the act of 1874 is an *ad valorem* tax upon the property.

The amendment of 1859 merely gives the authority to build the road. But to whom does it give it? It is to the Pensacola and Georgia Railroad Company as it stood under its statutory creation. If the exemption of the capital stock by the internal improvement law is to be construed as above contended, then the Pensacola and Georgia Railroad Company stood at the passage of the amendatory act, and of the act of 1866 authorizing the sale, and afterwards, at least up to 1869, when the trustees sold out the road from Quincy to Lake City, with this feature of exemption applying to and affecting any amendatory act, not expressly or necessarily contravening it. If such is not the construction of the law upon an exemption of the capital stock of a company, then whatever the effect was, it stood with such effect as the law gives it as a part of the charter just as much as if incorporated in the original act of 1853. If it did not have the ef-

fect contended, it certainly had not the effect to repeal the exemption clause of the 16th section of the original charter. So, assuming that it had no such effect as to exempt all the property as contended for, the Pensacola and Georgia Company, as it stood with this 16th section, was the company. The Legislature was dealing with it as it had created it, and the amendatory statute should be taken as a part of the original, and the whole construed together as one act.

Applying this rule as laid down in Harrell vs. Harrell, 8 Fla., 46, Sedgwick on Statutory Limitations, pp. 68, 209–10, and 1 Burroughs, 447, the 16th section should be held as applicable to both the original and amendatory acts. Tax cases, 12 Gil. and Johnson.

Assuming, then, that this branch road was either entirely exempt from taxation at the time the appellant purchased it, or subject merely to the half of one per cent. taxation, we maintain that it is impossible for the State of Florida, under any guise, however ingenious, to impose any tax upon it, unless it is a tax of one-half of one per cent. upon the annual net income from the property, and not even this, if the property was entirely exempt at the purchase. This we maintain on the ground that a purchase by the appellant, under the act of 1866, created a contract that the appellant should enjoy the same exemption from taxation, and that the contract is inviolable. 4 Wallace, 143 ; 13 Wallace, 264; 13 Wallace, 269; 16 Wallace, 244; 2 Wallace, 36 ; 18 Howard, 331.

WESTCOTT, J., delivered the opinion of the court.

The 47th Section of Chapter 1976 of the Laws of Florida, (acts 7th sess., 1874, page 21,) provides "that the president and secretary or superintendent of every railroad company, whose track or road-bed, or any part thereof, is in this State, shall annually, on or before the second Monday in June, return to the Comptroller of the State, under their oath, the total length of such railroads, the total length and value

of such roads, including rights of way, road-bed, side track and main track in the State, and the total length and value thereof in each county, city and incorporated town in this State. They shall also make return of the number and value of all their locomotive engines, passenger, freight, platform, construction and other cars, and the value thereof shall be apportioned by the Comptroller, *pro rata*, to each mile of main track, and the Comptroller shall notify the assessor of each county through which such railroad runs of the number of miles of track and value thereof and the proportionate value of personal property taxable in their respective counties; and to such values thus apportioned the assessor shall add the value of all other real property, together with all fixtures, machinery, tools and other property within their respective counties; and upon the value thus ascertained, taxes shall be assessed the same as upon the property of individuals, and any agent of such company is authorized to pay such tax to the collector and retain the amount out of any money in his possession belonging to such road."

Section 24 of Article XVI of the Constitution of 1868, (the Constitution operative when the section of the revenue law above quoted was passed,) provided that "the property of all corporations, whether *heretofore* or hereafter incorporated, shall be subject to taxation, unless such corporation be for religious, educational or charitable purposes."

The Atlantic and Gulf Railroad Company, being in possession of, and operating as the owner thereof, a line of railway running through the county of Suwannee in this State, George W. Allen, the collector of revenue of that county, claiming to act under the provisions of the act of the Legislature and constitutional provision quoted above, made a seizure of certain property of the said railroad company with the purpose of selling the same to satisfy the tax alleged to be due the State of Florida, and was proceeding to take action looking to the sale thereof.

Under this state of circumstances, the Atlantic and Gulf Railroad Company file a bill in the Circuit Court of the Third Judicial Circuit of Florida for Suwannee county against said collector, setting forth the manner in which it acquired said property, and alleging that by virtue of the legislation under which it acquired the said property, and the right to own and operate the same as a body politic and corporate in the State the said road and all the property appertaining thereto was exempt from taxation; that the legislation referred to did not confer simply a privilege of temporary exemption of such property from taxation, which might be subsequently recalled by the sovereign; that such legislation constituted a contract, which could not be subsequently impaired by action of the State, either through a constitutional convention or an act of legislation passed in conformity to a provision of the Constitution. The bill prayed an order enjoining the sale threatened, for a perpetual injunction at the hearing, and for a decree declaring the act authorizing the tax unconstitutional and void. Upon the agreement of parties the sale was postponed. Subsequently the defendant interposed a demurrer to the bill. The ground of demurrer was want of equity in the bill. Any question *as to the jurisdiction* of the court to enjoin the collection of taxes, was waived by the parties. Upon the hearing of this demurrer, the court sustained the same and dismissed the bill. From this decree this appeal is prosecuted.

The general question here involved is, whether, at the time the constitutional provision and the legislation above quoted authorizing this *ad valorem* tax were passed, this property was exempt from such taxation by virtue of a contract between the State of Florida and the Atlantic and Gulf Railroad Company. If such a contract existed, then it was beyond the power of both the convention and the Legislature thus to destroy it. The power of the State is limited in this respect by the Constitution of the United States, and this limitation extends as well to a convention of the people of

a State as to the general legislative power appertaining to a State government.

This brings us to inquire how and in what manner this property was acquired by the Atlantic and Gulf Railroad Company, and whether it is, in its hands, exempt from this *ad valorem* tax. The bill alleges that it acquired this property from the Pensacola and Georgia Railroad Company, that by virtue of a contract with said Pensacola and Georgia Railroad Company " it became seized and possessed, in its own right, of the said road," and by virtue of the legislation of this State, it became entitled to all of the rights appertaining to said property in the hands of the Pensacola and Georgia Railroad Company, one of which, it claims, was exemption from such taxation as is here levied.

The act of the Legislature under which this property was acquired provides "that the P. & G. Railroad Company be and it is hereby authorized to sell and convey to the Atlantic and Gulf Railroad Company, of Georgia, the branch of their road commencing at Live Oak and running to the Georgia line, connecting with the branch of the road of the said Atlantic and Gulf Railroad Company, beginning at Lawton, on the said Atlantic and Gulf Railroad, in Georgia, and running to the Florida line, and all the rights, franchises and privileges of the said Pensacola and Georgia Railroad Company applicable to and connected with said branch road, in all respects as the same are and have been by law vested in said Pensacola and Georgia Railroad Company." (Chap. 1573, Section 1, Laws of Fla.) There is no room for doubt as to the effect of this legislation. It is plain and direct. It is as positive and definite as it could be made. The sale of the road to the Atlantic and Gulf Company under this act is to pass all the *rights, franchises and privileges of the Pensacola and Georgia Company in all respects* as the same were, by law, vested in the Pensacola and Georgia Company. The object, purpose and effect of the law is upon the sale to vest the Atlantic and Gulf Company with the

same rights as were in the Pensacola and Georgia Company. A right of exemption from taxation can be passed under the general language of "all the rights" as well as any other right. We can see no difference. In all cases the language must be clear to create such an exemption as is here claimed, but it is going too far to hold that *each right* must be enumerated in order to pass it. The term "all rights" embrace each right, and there is no room for the least doubt on the subject. The case of Trask vs. Maguire, 18 Wall., 405, covers the point here suggested, if, indeed, so plain a proposition needs any authority to sustain it. There was a sale in that case authorized by an act of the Legislature. "The act, under which the sale was made, provided that the purchasers should have all the rights, franchises, privileges and immunities, which were enjoyed by the defaulting company under its charter and laws amendatory thereof." Say the Supreme Court of the United States: "The new company thus acquired all the immunity from taxation which the original company possessed." The only difference between the act in the case before the Supreme Court of the United States and the act here, is, that in Trask vs. Maguire, it gave the purchasing company the rights and privileges which the old company had "under its charter and laws amendatory thereof," while here, the act gives the purchasing company all the rights which "are and have been by law vested" in the vendor company. The effect of the language is the same; one is equally as explicit as the other. Rights which vest under a charter and its amendments, and rights vested by law, are terms signifying the same thing.

In Humphrey vs. Peques, 16 Wall., 248, the act of the Legislature, construed by the court, provided "that all the powers, rights and privileges granted by the charter of the Northeastern Railroad Company are hereby granted to the Cheraw and Darlington Railroad Company, and subject to the conditions therein contained." Under the orginal act to incorporate the Northeastern Railroad Company, no exemp-

tion from taxation was made; under an amendment it was exempted. The Supreme Court held that after the passage of the amended act, "the Northeastern Railroad Company was, in law, as if it had originally been chartered" with all the rights conferred by the amended act, and that under the general language, granting "all the powers and rights" vested in the Northeastern Railroad Company, the right of exemption conferred by the amended charter passed to the Cheraw and Darlington Railroad Company.

The next question is, was this line of railway in Suwannee county, and its appurtenances, and all property therewith connected, exempt from the tax here levied in the hands of the P. & G. Railroad Company at the time of the sale to the Atlantic & Gulf Company? If it was, then such right passed to the A. & G. Company. This question has been discussed in two aspects. It is claimed that this line of road was exempt from all taxation by virtue of the provisions of the 18th section of an act entitled "An Act to Provide for and Encourage a Liberal System of Internal Improvements in this State," approved January 6th, 1855, (Chap. 610, Laws of Florida.) It is also claimed that the line of road was exempt from the tax here levied by virtue of the 16th section of the act incorporating the P. & G. Railroad Company, approved January 8th, 1853, Chapter 484, and the amendment thereof, approved January 15, 1859, Chap. 948.

The P. & G. Railroad Company was one of the companies accepting the provisions of the Act of January 6th, 1855; and the 18th section of that act provided, "That the capital stock of any railroad company accepting the provisions of this act shall be forever exempt from taxation, and the roads, their fixtures, and appurtenances * * * * * shall be exempt from taxation while the roads are under construction, and for the period of thirty-five years from their completion." It is contended that an exemption of the capital stock of the P. & G. Company from taxation was an ex-

emption of all of the property in connection with which the stock existed. As a general proposition it is true that the exemption of the capital stock of a company from taxation exempts the property in reference to which that stock exists, for the plain and simple reason that the stock, when considered independent of that property, is nothing more than a valueless piece of paper. The property is the representative of the stock, the stock the representative of the property, and as things of value and interest they are the same. Hence, it must be true that an exemption of one is the exemption of the other, for they are for the purposes of taxation the same thing. When, therefore, there is a plain and simple declaration by the Legislature that the capital stock of a company shall be exempt, and nothing more is said, that is an end of the question. Here, however, the general rule cannot operate, because the Legislature has plainly declared otherwise. It has said that while the capital stock shall *be forever* exempt, yet, that all the property of the road shall be exempt for thirty-five years after completion. The necessary inference from this is, that after thirty-five years have expired this property may be taxed. The exemption, then, ceases under the letter of the law. This section must be given a consistent construction. It is contrary to the elementary rules controlling statutory construction to give one clause of a section a construction not consistent with the clearly expressed meaning of another, when the first can be construed in harmony with the last. The Legislature here was prescribing a rule of taxation and not its rate. The effect of the section is to prohibit taxation of the stock as stock of the company; to forever prohibit the application of such a rule; but after the expiration of thirty-five years the property might be taxed by some other rule than by taxing its stock as stock. Besides it is far from clear that because this property of the P. & G. Railroad Company is exempt on account of a stock exemption of that company, that an exemption incident to

the stock of the P. & G. Company would enure to the benefit of the A. & G. Company, because the property it acquired was exempt, not as property of the P. & G. Company strictly, but because its stock was not taxed. This exemption was incident to this property only, because the stock of the P. & G. Company was not taxed. It was a special privilege attached to the stock of that corporation. The exemption was an incident of the stock interest of that particular company in that precise property, and because, in point of fact and law, this property appertained to stock in that particular company. It would seem, therefore, that wherever you could tax this property without taxing the stock of the P. & G. Company, it might be done. But however this may be, it is apparent that it was not the purpose to exempt the property owned by this company forever, when it declared its stock exempt for that time, but that the purpose was to require the Legislature to adopt some other rule of taxation. The term "roads" in this section refers strictly to the lines of road for the construction of which the internal improvement fund was created, and this line of road, a branch road from Live Oak to Lawton, was not embraced therein. To extend the exemption to other roads would be clearly inconsistent with the general purpose of the act, which was to encourage the system created by it, in which system the branch road was not embraced.

This disposes of the first aspect in which this question has been discussed, and we now reach the second view presented of it. It is claimed that this line of road was exempt from the tax here levied by virtue of the 16th section of the act incorporating the P. & G. Railroad Company; that under this section this road was exempt from such taxation when sold by the P. & G. Company to the A. & G. Company. If such was the case, then it is still exempt, if the original exemption was a contract beyond the control of subsequent action by the Convention and Legislature.

The 16th section of the act incorporating the P. & G.

Railroad Company provided "that the said railroad and its appurtenances and all property therewith connected, shall not be taxed higher than one-half of one per cent. upon its annual net income." Whether the original charter authorized the construction of this branch road, we deem it entirely immaterial to inquire, as the act approved January 15, 1859, amending the charter of the Pensacola and Georgia Company, gave this express authority, and it is sufficient for the purposes of this case to say that this amendment did authorize the construction of this road. Upon the adoption of this amendment, the road thereby authorized to be constructed became subject to the provisions of the original charter as to its management, control, operation and everything else. The original charter, as amended by this act, became the measure and source of the legal rights of this corporation, and this new road thus authorized to be constructed became its property, equally exempt from taxation as any other property acquired and owned before the amendment became operative. The highest tax, therefore, which can be levied, as to this road, in the hands of the Atlantic and Gulf Company, is a tax of one-half of one per cent. upon the annual net income derived therefrom. The tax here levied and proposed to be collected is an *ad valorem* tax upon the entire property, and, *if it is higher* than one-half of one per cent. upon the annual net income derived from the property, it is unauthorized, unless this original exemption in the charter was a privilege granted, which could be withdrawn, instead of a contract of effective obligation upon the State. In Wilmington Railroad vs. Reed, 13 Wall., 264, it is held by the Supreme Court of the United States that a charter to a railroad company, containing such an exemption as is here expressed, is a contract, and a law subsequently passed, laying a tax inconsistent with the exemption, violates the obligation of the contract, and is void. The same rule applies to the act of a constitutional convention impairing the obligation of a contract. Such action is void. Whatever doubt

may have once existed on this question, it is now settled by the repeated decision of the Supreme Court of the United States to the effect stated, and it would be a useless expenditure of words to discuss the matter here. We think this case comes clearly within the decision in 13 Wall., 264.

I will, however, say for myself, that as an original proposition, I would not hesitate to decide that the right to tax any particular piece of property cannot be made the subject of a perpetual exemption, binding as a contract, by one Legislature as against the power of a subsequent one. There are, in my judgment, many entirely satisfactory reasons why it cannot be. The essential elements of sovereignty necessary to the perpetuation of government cannot be made the subject of a permanent grant by the Legislature. If there is power to exempt one piece of property from taxation forever, there is power to exempt all, and the existence of this power to this extent involves the destruction of the State. If there is any limitation upon the power, it must be an entire limitation resulting from the nature of the subject. This matter is, however, no longer an open question. Judicial officers of a State must follow the repeated expression of opinion by the Supreme Court of the United States as to what is the obligation of a contract and what constitutes a contract within the meaning of the Constitution of the United States.

The position was taken in argument, that the grant of the franchises and rights to the Pensacola and Georgia Railroad Company, made by the Legislature, was in conflict with the Constitution operative at that time, (1853,) and hence that no right passed to the Atlantic and Gulf Railroad Company. That Constitution provided that no act of incorporation granting exclusive privileges should be granted for a longer period than twenty years. Even admitting that the act incorporating the Pensacola and Georgia Railroad Company was an act granting exclusive privileges within the meaning of this clause, (a question which we do not decide,) we can-

not see how this clause of that Constittution is a limitation upon the power of the Legislature of 1866, which granted these rights to the Atlantic and Gulf Railroad Company. In 1866, another and different Constitution limited the power of the Legislature.. At that date, (1866,) the twenty years during which the Pensacola and Georgia Railroad Company were to possess these rights had not expired. The right of exemption was then existing in the Pensacola and Georgia Railroad Company. In that year, the Legislature authorized the sale of this property to the Atlantic and Gulf Company, with the then existing rights of the Pensacola and Georgia Railroad Company ; and, for the purpose of operating this road, the act made that company a body politic and corporate in this State. The existence of the right of exemption in this company is co-existent with its right to exercise corporate powers, and it cannot be claimed that this right has expired by virtue of any.limitation in the Constitution operative in 1866, as the limitation therein contained was twenty years. The Atlantic and Gulf Company did not derive its right to exercise corporate powers as to this road through the Pensacola and Georgia Railroad Company. That right is the result of an express grant by the sovereign to it. The nature and kind of rights other than the right to be a corporation, which it acquired by the purchase, were to be ascertained by reference to the rights then existing in the Pensacola and Georgia Railroad Company, but the limit in time, as to their exercise, must be found in the charter of the Atlantic and Gulf Company, or in the Constitution then operative.

We have thus disposed of the questions in this case, so far as they involve the essential merits of this controversy. Our conclusion is, that any tax higher than one-half of one per cent. upon the annual net income derived from this property cannot be sanctioned. This conclusion, however, does not authorize an entire reversal of the judgment of the Circuit Court upon this demurrer. The plaintiff nowhere alleges

The Atlantic and Gulf R. R. Co. v. Allen.

in its bill that the tax here levied *is more than one-half of* *one per cent. upon the annual net income derived as stated.* If the tax here levied *is not higher than this sum,* then it is authorized, and neither the Circuit Court nor this court can presume the existence of a fact not alleged in the bill. No perpetual injunction should be awarded except upon full proof that the tax levied is in excess of the limitation fixed by law, and the burden of proof, as to this fact, is upon the company, it being a fact peculiarly within its knowledge. In addition to this, if the proofs disclose any tax as due, it will be a question whether the court should award a perpetual injunction as to the whole, or only as to the excess, or whether it will require the road to do equity before the equity which it asks will be granted. This question, however, is not involved upon this demurrer, and upon it we express no opinion.

The judgment upon the demurrer is affirmed, in so far as the demurrer is sustained, and it is reversed, in so far as it directs the bill to be dismissed. The case will be remanded, with directions to enter judgment sustaining the demurrer, with leave to amend upon the payment of all costs in the Circuit Court up to the date of the motion to amend; and there will be judgment in this court against the appellant for all costs of this court.